Mr. Justice DAVIS,
after stating the case, delivered the opinion of the court:
*336 The practical question involved in this case is one of easy solution. It is this: “ When did the right of pre-emption, under the fifth section of the act of September 20th, cease ?” Manifestly, after four months from the location of the lands. It is argued that Gee’s right was at an end if he did not prove his claim within four months from the location of the road. But such a construction would render valueless a wise provision which the legislature of Missouri, in the exercise of an enlightened liberality, had conferred on a deserving class of people. It is not probable that a man whose necessities compelled him to claim the benefits of a pre-emption law, living in an interior county, away from the local land offices, would be correctly informed even of the location of the route of a railroad, and he certainly could not know what lands would belong to the company, unless he knew the exact line the road had taken. And the legislature, in order to render the provision for an actual settler a privilege, and not a delusion, directed the company, within one year after the line of the road was fixed, to have a map of their lands recorded in the different counties through which their road passed.
It is said that, owing to the accuracy of the government surveys, whenever the location of one of these land-grant roads is settled, it is an easy matter to ascertain the lands that would belong to it.
If the location of the road was always on section lines, it would not be difficult to select the even sections within six miles of each side of the road. But a railroad rarely runs on straight lines. It makes short curves very often, and frequently runs di agonal1y across sections. It is well known that the General Land Office has encountered great difficulties in making correct selections of the lands which the bounty of Congress has bestowed on the States to aid in works of internal improvement. The selection is not merely mechanical, but requires skill and familiarity with land plats and surveys. On inquiry of the Commissioner of the General Land Office, we learn that in this very case, the descriptive lists of the lands to which the road was entitled, were not approved and signed by the Secretary of the Interior until February *337 10th, 1854, which was more than a month after Gee filed his claim and accompanying proofs. And to make it more evident that it is not an easy task to make an accurate description of the lands really granted, we learn further that additional, lists were afterwards certified to the State, in aid of said railroad, from time to time, and as late as the 15th of November, 1859.
It is contended that the legislature of Missouri had no power to grant the privileges of pre-emption. If this was a contest between the United States and the State of Missouri, the question of power would be a proper subject for examination. But the United States are not complaining, and no other party has a right to complain. If the act of the legislature imposed burdens, it nevertheless conferred great privileges, and if any right to object existed, it was waived when the company filed their acceptance with the Secretary of State.
It follows that the court below committed no error in holding “ that the location of the land in question by the Hannibal and St. Joseph Railroad Company was not complete, as regards this defendant, until said company caused a map thereof to be recorded in the office for recording deeds in the county in which said land is situated.”
Judgment affirmed with costs.